## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MILTON ROY, LLC<br>201 Ivyland Road<br>Ivyland, PA 18974 | :<br>:<br>: |
|           Plaintiff, | :   CIVIL ACTION NO.:<br>:<br>:   JURY TRIAL DEMANDED |
| vs. | :<br>: |
| NORTHEAST PUMP & INSTRUMENT,<br>INC.<br>190 Summer Street<br>Lunenburg, MA 01462 | :<br>:<br>:<br>:<br>: |
|  and | :<br>: |
| CHRISTOPHER MARCOS<br>285 Portsmouth Ave.<br>Stratham, NH 03885 | :<br>:<br>:<br>: |
| and | :<br>: |
| JOANN  CHATEAUNEUF MARCOS a/k/a<br>JOANN CHATEAUNEUF and JOANN<br>MARCOS<br>42 Stonebridge Drive<br>Dracut, MA  01826 | :<br>:<br>:<br>:<br>:<br>: |
|           Defendants. | |

## COMPLAINT

Plaintiff Milton Roy, LLC, by and through its attorney, Lavin, O'Neil, Cedrone & DiSipio, brings this Complaint against Defendants, Northeast Pump & Instrument, Inc., Christopher Marcos and JoAnn Chateauneuf Marcos, and alleges as follows:

## THE PARTIES

1.     Plaintiff Milton Roy, LLC ("Milton Roy") is a Pennsylvania limited liability company with its principal office located at 201 Ivyland Road, Ivyland, PA 18974.

2.　　　Defendant Northeast Pump & Instrument, Inc. ("NPI") is a corporation duly organized and existing under and by virtue of the laws of the State of Massachusetts with its principal place of business located at 190 Summer Street, Lunenburg, MA 01462.

3.　　　Defendant Christopher Marcos is an individual whose last known address is believed to be 285 Portsmouth Ave., Stratham, NH 03885 and is also the registered president of NPI.

4.　　　Defendant JoAnn Chateauneuf Marcos is an individual whose last known address is believed to be 42 Stonebridge Drive, Dracut, MA 03885 and is also the registered secretary of NPI.

## VENUE AND JURISDICTION

5.　　　Federal subject matter jurisdiction exists pursuant to 28 U.S.C. §1332 because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.　　　This Court has personal jurisdiction over the Defendants because they consented to the jurisdiction via their actions and a contractual agreement with Milton Roy.

7.　　　Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this judicial district and because Defendants contractually agreed to venue in this Court.

## THE DISTRIBUTOR AGREEMENT

8.      Milton Roy develops, manufacturers and markets a comprehensive range of controlled volume metering pumps and other related equipment, included those branded as "LMI."

9.      Milton Roy does not sell its products directly to the public.  Rather, Milton Roy sells its products through Master Distributors which are authorized to sell specific Milton Roy branded products within a defined territory.

10.      On May 7, 2012, Milton Roy and Christopher Marcos, as President of NPI, executed a Domestic Sales Distributor Agreement (the "Agreement").  A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

11.      Pursuant to the Agreement, Milton Roy appointed NPI as an authorized distributor of certain Milton Roy products to be distributed in a defined territory. *See, id.* at §1A and Exs. A and B.

12.      In exchange for NPI's appointment as a Master Distributor, NPI made various commitments to Milton Roy in the Agreement.

13.      NPI agreed that the Agreement was made upon the express condition that Marcos remain the President with active managerial control and 100% ownership interest of NPI. *See, id.* at §3.

14.      NPI agreed that it would notify Milton Roy if NPI was not in good financial standing. *See, id.* at §2.A.x.

15.     NPI agreed that product orders submitted to Milton Roy would be governed by the terms of the Agreement and Milton Roy's Standard Terms and Conditions. *See, id.* at §5.B.

16.     NPI agreed that payment for product orders became due with invoicing as shipments were made. *See, id.* at §5.D.

17.     NPI agreed to make its payments for product orders at net 30 days from the date of Milton Roy's invoice. *See, id.* at Ex. E, ¶5.

18.     NPI agreed that, in the event amounts were overdue, Milton Roy would be entitled to collection related expenses including up to a 1.5% per month interest fee, reasonable attorney's fees, and court costs. *See, id.* at Ex. E, ¶13.

19.     NPI agreed that its failure to pay any obligations due to Milton Roy would constitute a breach of the Agreement. *See, id.* at §5.H.

20.     NPI agreed that any breach of Section 11 of the Agreement entitled Milton Roy to "all costs, expenses and attorneys fees" incurred in getting NPI to cease improper use of said trade names and trademarks. *See, id.* at §11.B.

## MILTON ROY'S INTELLECTUAL PROPERTY INTEREST IN THE "LMI" MARK

21.     Milton Roy owns U.S. Registration No.2542436 for the word mark of "LMI" for its chemical injection pumps, controllers and parts.  The date of first use is as early as 1976.  This registration issued on February 26, 2002.  Sections 8 and 15 Declarations have been filed and approved.  This registration is in full force and effect and, pursuant to 15 U.S.C. §§ 1057(b) and

1115(b), constitutes conclusive evidence of the validity of the mark and Milton Roy's exclusive right to use the mark in commerce in connection with the goods specified in the registration.

22.    Through use of the aforementioned LMI mark, Milton Roy has developed significant goodwill.

23.    To protect its investment in LMI marks, Milton Roy has defended its LMI marks against infringers and potential infringers.

24.    Milton Roy's efforts to market its LMI products have resulted in significant sales. Moreover, Milton Roy's LMI products have benefited from and also contributed to Milton Roy's high reputation for quality.

25.    With respect to the Agreement, NPI agreed to provisions regarding the use of certain Milton Roy trade names and trademarks, including the agreement to cease and "promptly" discontinue use of said trade names and trademarks once the Agreement expired or was terminated. *See, id.* at §11.

## THE BACKGROUND OF NPI, CHRISTOPHER MARCOS AND JOANN CHATEAUNEUF MARCOS

26.    Christopher Marcos married JoAnn Chateauneuf Marcos on June 15, 1985 in the Commonwealth of Massachusetts.

27.    In 1993, Christopher Marcos and JoAnn Chateauneuf Marcos purchased real property located at 42 Stonebridge Drive in Dracut, Massachusetts.

28.    On April 1, 1997, articles of incorporation and organization were filed for NPI in the Commonwealth of Massachusetts with Christopher Marcos serving as a director and JoAnn Chateauneuf Marcos serving as its clerk/secretary.

29. By August 15, 2001, Christopher Marcos and JoAnn Chateauneuf Marcos stopped living at the same residence.

30. By 2002, Christopher Marcos had become president, treasurer and director of NPI and JoAnn Chateauneuf Marcos remained as NPI's clerk/secretary.

31. Christopher Marcos and JoAnn Chateauneuf Marcos retained these positions at all times relevant to this Complaint.

32. Despite being separated for over a year, Christopher Marcos and JoAnn Chateauneuf Marcos jointly executed a mortgage for the real property at 42 Stonebridge Drive in Dracut, Massachusetts in September 2002.

33. This same mortgage was refinanced in 2012.

34. Despite being separated for over eleven years, Christopher Marcos and JoAnn Chateauneuf Marcos jointly executed a replacement mortgage for the real property at 42 Stonebridge Drive in Dracut, Massachusetts in 2012.

35. In 2014, NPI started failing to make payments to Milton Roy as they became due.

36. Upon information and belief, by 2015, at fair valuations, the sum of NPI's debts exceeded the value of its assets.

37. On March 6, 2015, Milton Roy notified NPI and Christopher Marcos that it was terminating the Agreement with NPI effective July 4, 2015 due to NPI's failure to pay invoices when they became due.  A true and correct copy of the termination letter is attached hereto as **Exhibit 2**.

38. Between March 6, 2015 and July 4, 2015, NPI continued to place orders with Milton Roy for products.

39. In compliance with the Agreement, Milton Roy delivered these products to NPI.

40.    For every single invoice issued during the above time period, the payment obligations of NPI became both ripe and past due.

41.    The principal amount of these overdue invoices is $240,910.27, not accounting for the monthly penalty interest fee.   True and correct copies of the overdue invoices are attached hereto as **Exhibit 3**.

42.    Following the termination of the Agreement, NPI filed its Annual Report with the Commonwealth of Massachusetts for the 2015 fiscal year on February 19, 2016.

43.    On June 17, 2016, after being separated for nearly fifteen years, Christopher Marcos and JoAnn Chateauneuf Marcos filed a divorce petition.

44.    When NPI's Annual Report for the 2016 fiscal year became due in February 2017, NPI did not file one and has not filed one since.

45.    In July of 2017, Christopher Marcos then executed a quit claim deed, relinquishing all of his interest in the real property located at 42 Stonebridge Drive in Dracut, Massachusetts to JoAnn Chateauneuf Marcos for $1.00.

46.    To this day, NPI has not brought its account with Milton Roy to a paid or current status.

47.    To this day, despite the Agreement termination, NPI continues to advertise on its website that it is an LMI authorized distributor for the Northeast.   True and correct copies of the website representation are attached hereto as **Exhibit 4**.

48.     To this day, despite the Agreement termination, NPI continues to advertise on its website that it is the only factory authorized LMI service center in New England and New York. *Id.*

49.     To this day, despite the Agreement termination, NPI continues to advertise on its website that it is the only factory authorized repair center in New England & New York for LMI products. *Id.*

<u>COUNT I</u>
<u>BREACH OF THE CONTRACT - UNPAID PAST INVOICES</u>
<u>(NPI)</u>

50.     Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

51.     The Agreement is a valid, binding, and enforceable contract between Milton Roy and NPI.

52.     Milton Roy performed all conditions precedent to enforce its rights pursuant to the terms of the Agreement.

53.     Under the Agreement, NPI agreed and had a duty to pay invoiced amounts within thirty (30) days of the invoice date.

54.     In breach of the Agreement, NPI failed to pay Milton Roy for past due invoices and the other costs allowed pursuant to the Agreement.

55.     As a result of the breach and failure to pay the past due invoices, Milton Roy has sustained monetary damage.

8

56.     The monetary damage consists of a principal amount of $240,910.27 in past due invoices, $107,343.45 of interest charges as of the date of this filing and $4,040.32 in interest charges for every 30-day period following the filing of this Complaint.

57.     The monetary damage also consists of the costs of suit and reasonable attorney fees.

WHEREFORE, Milton Roy, LLC demands judgment in its favor and against Northeast Pump & Instrument, Inc. for the amount of $348,253.72 together with applicable interest, cost of suit, reasonable attorneys' fees and such other relief as the Court deems just.

**COUNT II**
**BREACH OF CONTRACT - TRADEMARK USE**
**(NPI)**

58.     Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

59.     The Agreement is a valid, binding, and enforceable agreement between Milton Roy and NPI.

60.     Milton Roy performed all conditions precedent to its rights to enforce the terms of the Agreement.

61.     Under the Agreement, NPI agreed to promptly cease use of Milton Roy associated trade names and trademarks as well as representations as to its relationship with Milton Roy when the Agreement expired or was terminated.

62.     In breach of the Agreement, NPI has post-termination wrongfully continued to suggest, via its website, that NPI is a LMI authorized master distributor for the Northeast, is the

only factory authorized LMI service center in New England and New York, and that it is the only factory authorized repair center in New England and New York for LMI products.

63.     NPI's conduct has caused and, if not enjoined, will continue to cause irreparable damage to Milton Roy's business, reputation, and goodwill.

64.     In addition, the Agreement requires NPI to pay Milton Roy for all costs, expenses and attorney fees incurred by Milton Roy to have NPI cease unauthorized use of its trade names and trademarks.

WHEREFORE, Milton Roy, LLC demands judgment in its favor against Northeast Pump & Instrument, Inc. for its cost of suit, reasonable attorneys' fees together with interest, injunctive relief requiring that NPI cease use of LMI trade names and trademarks and such other relief as the Court deems just.

**COUNT III**
**THE LANHAM ACT – FALSE ADVERTISING**
**(NPI)**

65.     Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

66.     This cause of action is for false advertising under 15 U.S.C. § 1125(a) of the Lanham Act.

67.     NPI has published statements to the public on its website suggesting that it is still a LMI authorized distributor for the Northeast.

68.     NPI has published statements to the public on its website stating it is the only factory authorized LMI service center in New England and New York.

69.     NPI has published statements to the public on its website stating it is the only factory authorized repair center in New England & New York for LMI products.

70.     Upon information and belief, NPI uses LMI marks in an effort to confuse, mislead or deceive prospective customers into believing that it is an authorized master distributor of LMI products for the Northeast region and that it is the only LMI factory authorized service and repair center in New England and New York, when in fact it is not authorized to do any of these things.

71.     NPI's claims misrepresent the nature, characteristics, quality and origin of these LMI products and services and Milton Roy is likely to be damaged by such actions.  Accordingly, such conduct constitutes false and misleading advertising under §43(a) of the Lanham Act.

72.     Upon information and belief, NPI had knowledge of the falsity of its representations as of mid-July 2015 in that it knew that it was not an authorized master distributor of LMI products for the Northeast region and that it was not a LMI factory authorized service or repair center for the New England and New York areas

73.     The conduct of NPI has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Milton Roy and its business, reputation and goodwill.

WHEREFORE, Milton Roy demands injunctive and monetary relief as articulated under 15 U.S.C. §§ 1116 and 1117 of the Lanham Act and such other relief as the Court deems just.

11

## COUNT IV
## THE LANHAM ACT – TRADEMARK INFRINGEMENT
### (NPI)

74.    Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

75.    This cause of action is for trademark infringement pursuant to 15 U.S.C. §1051, *et seq*.

76.    Milton Roy owns and has properly registered the stylized name of "LMI".

77.    Through use of this LMI mark, Milton Roy has developed significant goodwill.

78.    Milton Roy's LMI mark is distinctive and has acquired secondary meaning and significance in the minds of the relevant public.

79.    After Milton Roy's adoption and use of LMI marks in connection with its chemical injection pumps, controllers and parts, and with actual and constructive notice thereof, NPI adopted and used the LMI marks in connection with its sale of chemical injection pumps, controllers and parts.

80.    The activities of NPI are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Milton Roy's reputation and goodwill.

81.    NPI has infringed upon Milton Roy's marks in interstate commerce and in this state by various acts, including marketing and offering chemical injection pump, controller and part service and repair for sale under the designation of LMI marks.  This unauthorized use by NPI constitutes infringement of Milton Roy's registered marks, described above, in violation of

the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as amended, to the substantial and irreparable injury of the public and of Milton Roy's business, reputation, and goodwill.

82.    Upon information and belief, the activities of NPI complained of herein constitute willful and intentional infringement of Milton Roy's federally registered marks, in derogation of Milton Roy's rights.   Acts of infringement commenced and have continued in spite of NPI's knowledge that the use of LMI marks or copy or colorable imitation thereof was and is in contravention of Milton Roy's rights.

83.    Since the termination of the Agreement, Milton Roy has not given consent directly or indirectly to NPI to use the LMI marks, or any mark similar thereto.

84.    NPI's conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Milton Roy in their marks and in their business, reputation, and goodwill.

85.    Milton Roy is thus entitled to injunctive and monetary relief as articulated under 15 U.S.C. §§ 1116 and 1117 of the Lanham Act.

WHEREFORE, Milton Roy demands injunctive and monetary relief as articulated under 15 U.S.C. §§ 1116 and 1117 of the Lanham Act and such other relief as the Court deems just.

## COUNT V
## FRAUDULENT MISREPRESENTATION
### (NPI)

86.    Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

87.    From 2014 to 2015, NPI represented that it was solvent, represented that it would remain solvent up to and past the July 4, 2015 termination date, and/or purposefully omitted the status of its insolvency to Milton Roy.

88.    These representations and/or omissions included financial disclosures required per the Agreement.

89.    NPI made these representations and/or omissions knowing that it was not solvent and would not be solvent up to and past the July 4, 2015 termination date.

90.    NPI made these representations and/or omissions for the purpose of inducing Milton Roy to ship additional products to NPI from March 6, 2015 to July 4, 2015.

91.    In reliance upon these NPI representations and/or omissions, Milton Roy acted to its detriment including shipping over $200,000 worth of LMI products to NPI, for which NPI either never intended to make payment and/or never had the ability to make payment upon.

WHEREFORE, Milton Roy, LLC demands judgment in its favor and against Northeast Pump & Instrument, Inc. for the amount of $348,253.72 together with applicable interest, cost of suit, reasonable attorneys' fees and such other relief as the Court deems just.

## COUNT VI
## FRAUDULENT TRANSFERS
### (NPI, Christopher Marcos, JoAnn Chateauneuf Marcos)

92.    Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

93.    This Count is brought pursuant to the Pennsylvania Uniform Fraudulent Transfer Act 12 Pa. C.S.A. § 5101, *et seq.*

94.     As NPI's debts continued to grow in light of losing the Master Distributor business with Milton Roy, it became clear to NPI and its officers that NPI's financial future was dire.

95.     Faced with the reality that the business was failing, the NPI officers undertook transfers of remaining NPI assets to satisfy other personal obligations and/or to shield the assets for themselves at a time when they knew NPI had outstanding debts to Milton Roy.

96.     In order to fraudulently avoid payment of NPI's obligations to creditors, including Milton Roy, Defendants concocted a scheme to divert and siphon funds from NPI, at a time when it was clear the company was insolvent or within the zone of insolvency.

97.     This diversion of funds was done with the intent to preserve the funds for the personal use of both Christopher Marcos and JoAnn Chateauneuf Marcos before NPI's ability to continue its business ended.

98.     Alternatively, Defendants undertook transfers of NPI funds which left NPI undercapitalized and with unreasonably small assets that were insufficient to satisfy NPI's debts which were already due or were to become due.

99.     Defendants diverted the funds by using, among other things, as a way to conceal the funds and transfer them in such a matter so that all Defendants would become judgment proof.

100.    Upon information and belief, the diversion of funds was comprised of self-dealing actions including unwarranted shareholder disbursements, inflated salaries for Christopher Marcos and JoAnn Chateauneuf Marcos, unwarranted bonuses for Christopher Marcos and JoAnn Chateauneuf Marcos, other disbursements to repositories connected to Christopher Marcos and/or JoAnn Chateauneuf Marcos which involved no consideration or unequal value received by NPI, and/or the divorce proceedings between Christopher Marcos and JoAnn Chateauneuf Marcos.

101.    These actions were performed with the intent to hinder, delay and defraud creditors including Milton Roy or alternatively, done with the knowledge that as a result of such transfer, NPI would be unable to satisfy debts due or that would become due.

102.    By reason of the aforementioned actions of Defendants, Milton Roy has been damaged.

103.    Milton Roy is entitled to a declaratory judgment that these transfers are null and void ab initio and are subject to attachment for purposes of satisfaction of the obligations owed to Milton Roy by NPI.

WHEREFORE, Milton Roy, LLC demands judgment in its favor, including a declaration that these transfers are null and void ab initio and a judgment jointly and severally against Defendants for the amount of $348,253.72 together with applicable interest, cost of suit, reasonable attorneys' fees and such other relief as the Court deems just.

**COUNT VII**
**BREACH OF FIDUCIARY DUTY**
**(Christopher Marcos and JoAnn Chateauneuf Marcos)**

116.    Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

117.    NPI has been insolvent or within the zone of insolvency since at least 2014.

118.    In 2014, the only officers of NPI were Christopher Marcos and JoAnn Chateauneuf Marcos.

119.    At all times that NPI was insolvent or in the zone of insolvency, NPI's officers owed a fiduciary duty to NPI's creditors, including Milton Roy.

120.    While NPI was insolvent, the officers were required in making decisions to take into account the impact of those decisions upon NPI's creditors, assuring that NPI at all times acted in the best interests of NPI and its creditors.

121.    The NPI officers' fiduciary duty to the creditors, including Milton Roy, included a duty to not use their powers for their own benefit and to the detriment of creditors.

122.    NPI officers, Christopher Marcos and JoAnn Chateauneuf Marcos, breached the fiduciary duties of care, good faith and loyalty that they owed to the creditors, including Milton Roy, and engaged in acts that harmed the interests of creditors.

123.    At the direction of its officers, NPI defrauded Milton Roy by agreeing to purchase $240,910.27 worth of products from Milton Roy with no intention of paying for those products after NPI was notified of Milton Roy's decision to terminate the Agreement.

124.    At the direction of its officers, while NPI was insolvent or in the zone of insolvency, the officers directed funds from NPI for their personal use rather than for the benefit of NPI.

125.    While NPI was insolvent or in the zone of insolvency, the officers used NPI's funds to pay themselves both directly and indirectly, rather than repaying NPI's other creditors, including Milton Roy.

126.    The officers engaged in a pattern of mismanagement that caused and deepened NPI's insolvency.

127.    The officers' breaches of their fiduciary duty to Milton Roy resulted in damage to Milton Roy.

WHEREFORE, Milton Roy, LLC demands judgment in its favor, jointly and severally against Christopher Marcos and JoAnn Chateauneuf Marcos for the amount of $348,253.72 together with applicable interest, cost of suit, reasonable attorneys' fees and such other relief as the Court deems just.

## COUNT VIII
## PIERCING THE CORPORATE VEIL
### (Christopher Marcos and JoAnn Chateauneuf Marcos)

116.   Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

117.   There is a unity of interest and ownership between NPI and Christopher Marcos.

118.   Christopher Marcos exercises managerial control of NPI and is the equitable owner with sufficient unity of interest in NPI to satisfy piercing the corporate veil of NPI.

119.   JoAnn Chateauneuf Marcos, an officer of NPI, in turn exercised control over Christopher Marcos by virtue of the divorce proceeding between them.

120.   Christopher Marcos and JoAnn Chateauneuf Marcos controlled or influenced NPI such that the Court should disregard the separate corporate entity of NPI and hold both individuals liable for the claims against NPI set forth herein.

121.   In addition, the formalities required for the operation of NPI have not been observed and NPI has failed to maintain adequate corporate records.

122.   The safe harbor protections provided to Christopher Marcos and JoAnn Chateauneuf Marcos by their position as owners and/or officers of NPI, if any, have been eliminated by virtue of their tortious and unlawful actions.

123. NPI is a mere facade for Christopher Marcos and JoAnn Chateauneuf Marcos.

124. Accordingly, Christopher Marcos and JoAnn Chateauneuf Marcos are alter egos of NPI and any corporate structure should be disregarded.

125. Injustice will result if the corporate veil is not pierced to make Christopher Marcos and JoAnn Chateauneuf Marcos responsible for NPI's debts.

126. An equitable result is achieved by disregarding the corporate form and holding Christopher Marcos and JoAnn Chateauneuf Marcos personally liable for NPI's actions and debts as NPI appears to have been drained of assets and, without piercing the corporate veil, Milton Roy will be unable to recoup damages and monies owed by NPI.

127. Christopher Marcos and JoAnn Chateauneuf Marcos should therefore be held liable for NPI's actions as described in this Complaint.

WHEREFORE, Milton Roy, LLC demands judgment in its favor, jointly and severally against Defendants for the amount of $348,253.72 together with applicable interest, cost of suit, reasonable attorneys' fees and such other relief as the Court deems just.

## COUNT IX
## CIVIL CONSPIRACY
### (Defendants)

128. Milton Roy incorporates by reference all paragraphs of this Complaint as if set forth fully herein.

129. Christopher Marcos and JoAnn Chateauneuf Marcos have used the entity structure of NPI to perpetrate an unlawful scheme by which fraudulent transfers were made in order to avoid payment of NPI's obligations to creditors and render the underlying structure of NPI essentially judgment proof.

130.    In furtherance of this scheme, Christopher Marcos and JoAnn Chateauneuf Marcos unlawfully transferred NPI funds to satisfy the obligations of Christopher Marcos and JoAnn Chateauneuf Marcos, and/or used the divorce as mechanism to shield assets of NPI from creditors.

131.    The ultimate goal was to leave NPI as a hollow shell, devoid of any asset capable of satisfying judgment for unsecured creditors such as Milton Roy.

132.    Milton Roy has suffered damages as result of the defendants' acts.

WHEREFORE, Milton Roy, LLC demands judgment in its favor, jointly and severally against Defendants for the amount of $348,253.72 together with applicable interest, cost of suit, reasonable attorneys' fees and such other relief as the Court deems just.

## JURY DEMAND

Milton Roy, LLC hereby demands a twelve (12) member jury in the above-captioned matter.

LAVIN, O'NEIL, CEDRONE & DiSIPIO

BY: _____

Ricky M. Guerra (93264)
Camille L. Easterbrook (204538)
190 North Independence Mall West
6th & Race Streets, Suite 500
Philadelphia, PA  19106
Tel Nos.:      (215) 351-1925
               (215) 351-1908
Fax No.:       (215) 351-3133
Email:         rguerra@lavin-law.com
               ceasterbrook@lavin-law.com
               *Attorneys for Plaintiff*