## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MILTON ROY, LLC,

        *Plaintiff,*

    v.

NORTHEAST PUMP & INSTRUMENT, INC., *et al.,*

        *Defendants.*

CIVIL ACTION
NO. 17-5830

**PAPPERT, J.**                                                    **August 22, 2018**

## <u>MEMORANDUM</u>

On December 29, 2017, Milton Roy, LLC sued Northeast Pump & Instrument, Inc., Christopher Marcos and JoAnn Chateauneuf Marcos alleging breach of contract and various other claims arising out of a business relationship between the entities. (*See* Compl., ECF No. 1.) NPI and Christopher Marcos failed to respond to the Complaint within twenty-one days of service and on February 9 and 11, 2018, respectively, the Clerk of Court entered default against them. On February 23, NPI and Christopher filed a Motion to Set Aside Default (ECF No. 11), which the Court now grants for the reasons that follow.

I

Milton Roy develops, manufactures and markets controlled volume metering pumps, including those branded as "LMI," and sells its products through distributors. (Compl. ¶¶ 8, 9.) On May 7, 2012, it executed a Domestic Sales Distributor Agreement ("the Agreement") with NPI, a design, sales, installation and repair company for chemical feed equipment for water and wastewater treatment. (*Id*. at ¶ 10; *id*., Ex. 4.)

NPI was incorporated in 1997 by Christopher Marcos and his wife JoAnn. (Compl. ¶¶ 26, 28.) Milton Roy alleges that Christopher was the President, Treasurer and Director of NPI while JoAnn served as its Clerk and Secretary. (*Id*. at ¶¶ 30, 31.)

The Complaint states that in 2014 NPI fell behind on its payments to Milton Roy and by 2015 NPI's overall debt exceeded its assets. (*Id*. at ¶¶ 35, 36.) On March 6, 2015, Milton Roy notified NPI that it was terminating the Agreement effective July 4, 2015 due to NPI's failure to pay outstanding invoices. (*Id*. at ¶ 37; *id*., Ex. 2.) Milton Roy claims that NPI owes $240,910.27 in overdue invoices.[1] (Compl. ¶ 41; *id*., Ex. 3.) It further alleges that despite the termination of the Agreement, NPI continues to advertise itself as an LMI authorized distributor and the exclusive LMI service center in the Northeast. (Compl. ¶¶ 47, 48; *id*., Ex. 4.)

In June 2016, the Marcoses divorced after being separated for many years. (Compl. ¶ 43.) Milton Roy alleges that in July of 2017, Christopher executed a quit claim deed on property the couple owned, relinquishing all interest in the property to JoAnn for $1. (*Id*. at ¶ 45.)

On February 2 and November 22, 2017, Milton Roy sent NPI and Christopher Marcos letters seeking payment of the unpaid invoices. (*See* Pl.'s Resp. at 2–3; *id*., Exs. 1 & 2.) Milton Roy filed this lawsuit the following month after receiving no response to its letters. (*See* Pl.'s Resp. at 3.) The complaint asserts claims for breach of contract, false advertising, trademark infringement, fraudulent misrepresentation, fraudulent transfers and civil conspiracy against NPI. (*Id*.) Christopher and JoAnn are named in the fraudulent transfer and civil conspiracy claims, as well as an additional claim for

---

[1]     Milton Roy seeks damages in the amount of $348,253.72, which includes interest owed as of the date of the Complaint as well as an additional "monthly penalty interest fee". (*See* Compl. ¶¶ 18, 41 & 56.)

breach of fiduciary duty. (*Id.* at 92–115, 128–32.) Milton Roy also seeks to pierce the corporate veil and hold each of them liable for NPI's debts. (*Id.* at ¶¶ 116–27.)

On January 24, 2018, Milton Roy filed a Certificate of Service stating that NPI and the Marcoses were served on January 17 and 19, respectively, making their answers due on February 7 and 9. (*See* ECF No. 2; *see also* ECF Nos. 6 & 8.) JoAnn answered the Complaint on February 6. (ECF No. 4.) However, NPI and Christopher failed to answer or otherwise respond and Milton Roy immediately requested the entry of default. (*See* ECF Nos. 5 & 7.) Less than two weeks later, counsel for NPI and Christopher entered his appearance and moved to set aside the default. (ECF Nos. 10 & 11.)

II

Federal Rule of Civil Procedure 55(c) permits the court to "set aside the entry of default for good cause." Fed. R. Civ. P. 55(c). "That determination is made in the sound discretion of the court." *Dizzley v. Friends Rehab. Program, Inc.*, 202 F.R.D. 146, 147 (E.D. Pa. 2001) (citing *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984)). In assessing whether to set aside default or default judgment, Courts consider three factors: (1) whether the plaintiff will be prejudiced if the default is set aside; (2) whether the defendant has a meritorious defense; and (3) whether "the default was a product of the defendant's culpable or inexcusable conduct." *Id.* (citation omitted). The Third Circuit Court of Appeals has "often emphasized that it does not favor defaults, and that in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits." *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982). Further, "[l]ess substantial grounds may be adequate for

3

setting aside a default than would be required for opening a judgment." *Feliciano v.*

*Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982).

A

A plaintiff establishes prejudice when setting aside an entry of default would

impair his or her ability to pursue a claim. *See id.* at 657. "[T]he prejudice requirement

compels plaintiffs to demonstrate that the plaintiff's claim would be materially

impaired because of the loss of evidence, an increased potential for fraud or collusion,

substantial reliance on the entry of default, or other substantial factors." *Dizzley*, 202

F.R.D. at 147–48 (citation omitted). Being forced to "litigate an action on the merits

rather than proceed by default does not," however, "constitute prejudice." *Choice Hotels*

*Int'l, Inc. v. Pennave Assocs. Inc.*, 192 F.R.D. 171, 174 (E.D. Pa. 2000) (citation omitted).

Milton Roy concedes that NPI and Christopher Marcos moved promptly to set

aside default, but argues that it will nevertheless be prejudiced by having to litigate its

claims because NPI does not dispute that it owes Milton Roy for past due invoices.

(Pl.'s Resp. at 9–10.) The prejudice inquiry, however, differs from the meritorious

defense assessment, *see Dizzley*, 202 F.R.D. at 147 ("Because the prejudice inquiry is

separate and distinct from the others, [Plaintiff] cannot conflate it with the others in

order to show prejudice."), and Milton Roy's argument amounts to a complaint that

setting aside default will require it to litigate on the merits, *see Feliciano*, 691 F.2d at

656–57 ("Delay in realizing satisfaction on a claim rarely serves to establish the degree

of prejudice sufficient to prevent the opening [of] a default judgment entered at an early

stage of the proceeding."). Given the relatively short time between entry of default and

the Defendants' Motion, it is doubtful that any available evidence will ultimately be

4

lost.  Further, nothing in the record suggests an increased potential for fraud or substantial reliance on the default.

B

To establish a meritorious defense, the allegations in the defendant's answer, if established at trial, must constitute a complete defense.  *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  A meritorious defense "can be a defense of any variety—whether a dispute of material fact[;] . . . an affirmative defense; the contention of failure to state a claim; or lack of subject matter jurisdiction . . . ."  *Collura v. Ford*, 2016 WL 409228, at *12 (E.D. Pa. Feb. 3, 2016).  However, it is not enough for a defendant to simply allege a defense.  Rather, the defendant must "'set forth with some specificity the grounds for his defense.'"  *In re Subramanian*, 245 F. App'x 111, 115 (3d Cir. 2007) (quoting *Harad v. Aetna Cas. and Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988)).

Milton Roy seeks damages for unpaid invoices from NPI and to pierce the corporate veil in order to hold the Marcoses liable.  It argues that the defaults should not be set aside because NPI does not contest that it failed to pay invoices, but merely disputes the amount of interest due.  While NPI and Christopher Marcos's Answer appears to both admit and deny that invoices remain unpaid, Christopher has asserted a defense to personal liability for NPI's debts.  Under Pennsylvania law, there is a strong presumption against piercing the corporate veil.  *See In re Blatstein*, 192 F.3d 88, 100 (3d Cir. 1999) (citing *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995)).  In considering whether to "disregard the corporate form," Pennsylvania courts consider "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to

5

perpetrate a fraud." *Lumax Indus.*, 669 A.2d at 895. Christopher has sufficiently

responded by denying the generalized statements in the Complaint that "[t]here is a

unity of interest and ownership between NPI and Christopher Marcos" and that "the

formalities required for the operation of NPI have not been observed." Further, he

asserts that NPI is a separate entity, a properly owned and operated business, and that

NPI maintained proper corporate records. In light of this defense, its importance to

resolving this litigation and the Third Circuit's preference for adjudicating disputes on

the merits, this factor weighs in favor of setting aside the defaults.

C

A defendant's conduct is culpable where he or she acts "willfully or in bad faith."

*Feliciano*, 691 F.2d at 657. This requires "more than mere negligence." *Hritz v. Woma

Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984). Willful or bad faith conduct can be

established when a defendant purposefully declines to fulfill their responsibility to file a

response with the Court. *See, e.g.*, *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984).

When a defendant demonstrates "negligence that had a dilatory result, but it does not

demonstrate dilatory intent or bad faith[,]" the entry of default was not the result of

inexcusable conduct. *Dizzley*, 202 F.R.D. at 148. Further, "[t]he record must contain

evidence affirmatively suggesting culpable conduct; the court should not infer the

requisite willfulness or bad faith from the mere delay itself." *Spurio v. Choice Sec. Sys.,

Inc.*, 880 F. Supp. 402, 405 (E.D. Pa. 1995).

Milton Roy believes that NPI and Christopher Marcos acted in bad faith, not

only by their failure to timely respond to the Complaint, but also by their failure to

respond to Milton Roy's pre-suit settlement demands. (Pl.'s Resp. at 5.) It asserts that

6

it sent Defendants two letters, in February and November 2017, which Defendants never answered, and that Defendants' delay in obtaining counsel and responding to the Complaint is a continuation of their conscious disregard for Milton Roy's allegations. (*See id*., Exs. A & B.) Defendants, while not addressing their failure to respond to the letters, contend that their recent delay resulted from their inability to obtain counsel. While NPI and Christopher's failure to respond to Milton Roy's pre-suit demands may not have been the best course of conduct, it does not rise to the level of culpable conduct that weighs against setting aside default. Rather, the relatively short period of time since the filing of the Complaint, Defendants' timely motion to set aside default and their willingness to proceed with litigation preclude the Court from concluding that their delay was the result of bad faith as opposed to negligence which may have led to a dilatory result.


An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.